IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE DIRECTSTREAM, LLC, *et al.,*[1]    :    Chapter 7
                                         :    Case No. 20-10534 (MFW)
                                         :    (Substantively Consolidated)
            Debtors.                     :

_____

DENIS A. KRUSOS,                         :
                                         :
            Appellant,                   :
       v.                                :
                                         :    Civ. No. 26-503-CFC
DON A. BESKRONE, solely as               :
Chapter 7 Trustee,                       :
                                         :
            Appellee.                    :

_____

**MEMORANDUM ORDER**

This appeal arises in the chapter 7 cases of DirectStream, LLC ("Debtor") and

certain affiliates (together, the "Debtors"). Denis A. Krusos ("Appellant"), has

appealed the Bankruptcy Court's April 23, 2026 *Order Denying Motion for 2004*

*Examination Authorizing Examination of Michael Shore and Requiring Production*

*of Documents, and Granting Related Relief* (Bankr. D.I. 271) (the "2004 Order").

The 2004 Order denied Appellant's request to examine Michael Shore—a former

attorney of the Debtors' lender, FG SRC, LLC—pursuant to Rule 2004 of the

Federal Rules of Bankruptcy Procedure (the "2004 Motion"). Appellant appealed

_____

[1] The bankruptcy cases were substantively consolidated, and the remaining estate is
being administered in the case captioned, *In re DirectStream, LLC,* No. 20-10534
(MFW) (Bankr. D. Del.). That docket is cited herein as "Bankr. D.I. __."

the 2004 Order and filed an emergency motion seeking a stay of the 2004 Order pending his appeal (D.I. 3) (the "Emergency Motion"). Because the Emergency Motion is procedurally improper, and Appellant fails to establish imminent, irreparable harm, the Emergency Motion will be denied.

**Background**

On March 5, 2020 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 7 of the Bankruptcy Code. Don A. Beskrone was appointed to serve as Chapter 7 Trustee (the "Trustee"). On January 29, 2021, the Bankruptcy Court, after receiving objections from Appellant and other parties (*see* Bankr. D.I. 82) entered an order approving a settlement agreement between the Trustee and the FG SRC (Bankr. D.I. 110) (the "Settlement Order"). The settlement agreement generally provided that FG SRC would use reasonable efforts to pursue certain IP litigation, and the estates would receive 10% of any proceeds recovered (the "Return"). (Bankr. D.I. 126-1 at 3 ¶ 5.) FG SRC was represented in the IP actions by The Shore Firm and attorney Mr. Shore on a contingency fee basis. Ultimately, the litigation was resolved by FG SRC, and the Trustee, on behalf of the estate, received the Return of approximately $250,000.

Central to this dispute is Appellant's belief that the litigation was worth significantly more than the Return. To that end, Appellant has filed various motions, appeals, and requests for stays and emergency relief, summarized only

1

briefly herein.  Beginning in 2024, Appellant, through counsel, sought information regarding the resolution of the litigation and the Return (including the value thereof), to which the Trustee responded and provided such information as was available to him.  The Trustee also facilitated discussions between Appellant, on the one hand, and FG SRC, on the other hand, to allow Appellant to investigate these issues.  There is no assertion that the Trustee impeded Appellant's investigation. Rather, the Trustee asserts that despite being prepared to close the estates in 2024 and the accrual of administrative expenses resulting from any delay (which inure to the detriment of creditors), the Trustee accommodated Appellant's requests for additional time to conduct his investigation.

On February 16, 2026, the Trustee file a notice of abandonment of the estate's future and contingent rights in any remaining value in the Return on the grounds that, in the exercise of his business judgment, it was of inconsequential value to the estates and/or attempts at liquidation of same would require greater expenditure of funds than that which could be realized by the estates, in light of the continued expense of keeping the estates open.  (*See* Bankr. D.I. 218; D.I. 5 at 5, 16.) Appellant filed a response seeking a 60-day stay of the Bankruptcy Court's consideration of the abandonment so that he could obtain new counsel following his split with several prior law firms and have time to depose Mr. Shore on the basis that "no information in connection with how much money was received from the [IP

litigation] was verified or certified." (Bankr. D.I. 220 at 5.)  The Trustee filed a thorough reply in further support of abandonment, outlining Appellant's history of delay. (*See* Bankr. D.I. 225.)  On March 26, 2026, the Bankruptcy Court approved the abandonment (Bankr. D.I. 233) (the "Abandonment Order").  On March 30, 2026, Appellant appealed the abandonment order.  Civ. No. 24-348-CFC, D.I. 1.

Thereafter, Appellant filed in the Bankruptcy Court two separate motions to stay the Abandonment Order pending appeal, repeating his arguments that his Recovery is lower than expected and that he needs the 2004 examination. (Bankr. D.I. 237, 241.)  The Bankruptcy Court denied both motions. (Bankr. D.I. 253, 272.) On April 20, 2026, Appellant appealed the stay denial order docketed at Bankr. D.I. 253.  Civ. No. 26-448-CFC, D.I. 1.

On March 13, 2026, Appellant filed his 2004 Motion.  (Bankr. D.I. 221.) Appellant sought only one piece of information: "how much did The Shore Firm get paid in contingency payments or other fees from any source in connection with the settlement of the IP actions?"  (*Id.* at 3.)  Federal Rule of Bankruptcy Procedure 2004 provides that on a party in interest's motion, the court may order the examination of any entity, but the scope is limited to the debtor's acts, conduct, or property; the debtor's liabilities and financial condition; any matter that may affect the administration of the debtor's estate; or the debtor's right to a discharge.  Fed. R. Bankr. P. 2004.  Appellant did not seek to examine the Trustee or the Debtors'

estates, so the Trustee did not formally object to the 2004 Motion. The only party that lodged an objection to the 2004 Motion was Mr. Shore. (Bankr. D.I. 254.) Mr. Shore asserted that he had already provided this information to Appellant, but, unsatisfied, Appellant sought the firm's tax returns, information to which he is not entitled. On April 22, 2026, the Bankruptcy Court held a hearing on the 2004 Motion and denied it in a bench ruling. On April 23, 2026, the Bankruptcy Court issued the 2004 Order.

Appellant's notice of appeal of the 2004 Order listed only the Trustee and the Office of the United States Trustee as interested parties, and failed to list Mr. Shore or his counsel. D.I. 1. *See* Fed. R. Bankr. P. 8007(b)(4) ("The movant must give reasonable notice of the motion to all interested parties"). When seeking emergency relief, the movant must provide an affidavit setting forth the nature of the emergency. Fed. R. Bankr. P. 8013(d) (setting forth required content when seeking expedited action). Thus, Appellant seeks emergent and extraordinary relief— despite failing to provide a sworn statement with facts—against a party to whom he failed to provide notice.

On May 5, 2026, the Court set an expedited briefing schedule with respect to the Emergency Motion. Unsurprisingly, Mr. Shore filed no response. Based on his interest in the prompt disposition of this matter, the Trustee did file a response to the Emergency Motion, which is now fully briefed. D.I. 3, 5, 6.

4

## Jurisdiction

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1).

Neither party addresses the Court's jurisdiction over this appeal. As a "general rule," courts have observed, "discovery orders are interlocutory." *In re Kaiser Grp. Int'l, Inc.*, 400 B.R. 140, 143 (D. Del. 2009). In determining whether an order of the Bankruptcy Court is final, the Court is required to take a flexible, pragmatic approach. *In re Kaiser Grp. Int'l, Inc.*, 400 B.R. 140, 143 (D. Del. 2009). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020). The Abandonment Order disposed of a discrete dispute within the chapter 7 case and is itself a final, appealable order. "Under the 'merger rule,' prior interlocutory orders [such as the 2004 Order denying the 2004 Motion] merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).[2]

---

[2] The Court does not endorse Appellant's filing of separate appeals with respect to the final Abandonment Order and the 2004 Order. However, "[Appellant] proceeds *pro se*, and accordingly, we construe his pleadings liberally." *See Laughlin v. Peck*, 552 Fed. App'x 188, 190 (3d Cir. 2014) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

## Discussion

"The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). "[A] stay of a Court's decision is an 'extraordinary remedy.'" *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (citations omitted). "Irreparable harm is one of four factors relevant to the stay analysis." *In re Mallinckrodt PLC,* 2022 WL 1206489, at *1 (D. Del. Apr. 22, 2022).[3] An applicant for a stay, however, "cannot succeed without showing that it will suffer irreparable harm absent a stay." *Id.* (citing *In re Revel AC, Inc.,* 802 F.3d 558, 568 (3d. Cir. 2015)). A harm is "irreparable" for stay purposes when it "cannot be prevented or fully rectified" by a successful appeal. *In re Revel AC*, 802 F.3d at 568 (quoting *Roland Mach. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)). Speculative harms are not enough: the movant "must 'demonstrate that irreparable injury is *likely* [not merely possible] in the absence of [a] [stay].'" *Id.* at 569 (emphasis in the original)

---

[3] In determining whether to grant a stay pending appeal, courts consider the following four factors:

> (1) [W]hether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether a stay is in the public interest.

*In re W.R. Grace & Co.*, 475 B.R. at 205.

6

(quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Moreover, the harm must be "more apt to occur than not." *Id.* Finally, "purely economic injur[ies], compensable in money," are also insufficient, except in those rare cases "where the potential economic loss is so great as to threaten the existence of the movant's business." *Id.* at 572 (quoting *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011)).

The Emergency Motion fails to establish or even attempt to explain the imminent, irreparable harm that will result in absence of a stay. *See* D.I. 3. Appellant argues that the 14-day automatic stay of the order will expire, but does not explain what harm, if any, will occur once it does. Appellant argues only that he "believe[s]" the 2004 examination "is an integral part of the value of the return"; that if the 2004 examination does not occur, "the appeal will be rendered moot causing me immediate and irreparable harm"; and that this Court's refusal to grant a stay "will destroy the subject matter of the appeal." (*Id.* at 1-2.) Appellant does not elaborate as to how or why any of this will occur.

Even if this Court were to "stay" the 2004 Order, that does not mean the 2004 examination would take place (as Appellant seems to believe). Nor would it render the appeal moot—such an examination could be taken at a later time, should Appellant prevail in his appeal of the Abandonment Order and related rulings, including the 2004 Order.

7

Moreover, whatever value Appellant believes the Return to have, it faces no risk of being diminished or extinguished during the pendency of the appeal. It simply is no longer property of the estate over which the Bankruptcy Court would have jurisdiction. *See Fields v. Bleiman*, 267 Fed. Appx. 144, 146 (3d Cir. 2008) ("[w]hen the abandonment became effective, the real property was no longer property of the estate"). "[A]bandonment removes the property from the bankruptcy estate and causes the trustee to lose all interest, rights and control with respect to the abandoned property." *In re Estiatorio Ent. Ltd.*, 669 B.R. 676, 684 (S.D.N.Y. 2025) (cleaned up). And once removed from the estate, Appellant is free to pursue the Return and any information thereon as if the chapter 7 had not occurred. *See In re Wilton Armetale*, Inc., 968 F.3d 273, 284 (3d. Cir. 2020) ("a trustee could choose to abandon a claim, and allow creditors to pursue it independently") (quoting *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 698 (2d Cir. 1989)).

Thus, Appellant is not harmed but rather is free to pursue the Return outside of the bankruptcy process for his sole benefit. In the same vein, Appellate can initiate a process that may provide him access to the information he sought via the 2004 Motion. And, as the Trustee previously explained in his response in support of abandonment, "[i]f [Appellant's] view is later confirmed, (a) Appellant can seek recovery personally against the Debtors (and the abandoned asset), or (b) the case can later be reopened based upon fraud (in the event it is determined a fraud was

8

perpetrated on the Trustee or the Court)"—which is precisely what Appellant claims. (*See* Bankr. D.I. 225 at 5.)

Appellant's reply that "the trustee is the proper party for this motion" because Appellant's "ability to examine Michael Shore can only come from the trustee authorizing the 2004 Motion" is a misstatement of the law. *See* D.I. 6 at 2; *see also id.* at 8 (arguing Trustee only has to "grant [Appellant] the 2004 examination.") In sum, Appellant has failed to establish irreparable harm in absence of a stay of the 2004 Order.

## **Conclusion**

Thus, setting aside the procedural infirmities addressed herein, Appellant has failed to establish that he will suffer irreparable harm in absence of a stay. Accordingly, no further analysis is required. *In re Revel AC*, 802 F.3d at 571 ("If the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.") (cleaned up).

\* \* \* \*

NOW THEREFORE, at Wilmington on this Twenty-ninth Day of May in 2026, it is hereby ORDERED that:

1.   Appellant's Emergency Motion (D.I. 3) is DENIED.

2.   The appeal shall proceed to mediation pursuant to this Court's July 19,

2023 Standing Order regarding procedures governing mediation of all appeals from

the United States Bankruptcy Court for the District of Delaware.

_____

CHIEF JUDGE